## WATSON v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited.

District Court, N. D. Texas, Dallas Division. January 23, 1928.

No. 3823.

**1. Appeal and error ⚬═76(1)—Decision is final, as regards appeal, when it terminates litigation on merits of case, leaving only enforcement by execution of what was determined; "final decision" (Jud. Code, § 128 [28 USCA § 225]).**

Decision is "final decision," within meaning of Judicial Code, § 128 (28 USCA § 225), allowing appeals or writs of error from District Courts from final decisions, when it terminates litigation between parties on merits of case, and leaves nothing to be done but to enforce by execution what has been determined.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decision.]

**2. Courts ⚬═366(23)—Federal court was not bound by state court's construction of state compensation statute as regards court's retaining jurisdiction of claim (Vernon's Ann. Civ. St. Supp. 1918 (Tex.) arts. 5246—25, 5246—44).**

Federal court, sitting in Texas and hearing suit under Texas workmen's compensation statute (Vernon's Ann. Civ. St. Supp. 1918 (Tex.) art. 5246—44), was not bound by Texas Court of Civil Appeals decision in construing article 5246—25 as regards court's retaining jurisdiction of claim and administering it.

**3. Master and servant** ⟨⟩417(9)—**Judgment awarding payments to injured employee under Texas compensation statute should not provide that court retain jurisdiction of claim (Vernon's Ann. Civ. St. Supp. Tex. 1918, arts. 5246—25, 5246—44; Jud. Code, § 128 [28 USCA § 225]).**

Judgment, in suit by injured employee under Vernon's Ann. Civ. St. Supp. Tex. 1918, art. 5246—44, awarding $20 per week, less amount already paid, and $20 per week for 137 weeks yet to come, should not provide that court retain jurisdiction to review judgment, and end, diminish, or increase compensation, under article 5246—25, since final judgment should be rendered, so that party may appeal, under Judicial Code, § 128 (28 USCA § 225).

At Law. Action by King Watson against the Employers' Liability Assurance Corporation, Limited. Judgment for plaintiff. On order to prepare judgment. Judgment entered.

White & Yarborough, of Dallas, Tex., for plaintiff.

Adair Rembert and Thompson, Knight, Baker & Harris, all of Dallas, Tex., for defendant.

ATWELL, District Judge. In 1913 the Texas Legislature passed the Employers' Liability and Insurance Acts. In 1917 these acts were amended. Article 5246, Vernon's Texas Civil Statutes 1918. Article 5246—44 (5246) reads as follows:

"All questions arising under this act, if not settled by agreement of the parties interested therein and within the terms and provisions of this act, shall, except as otherwise provided, be determined by the board. Any interested party who is not willing and does not consent to abide by the final ruling and decision of said board shall within twenty days after the rendition of said final ruling and decision by said board give notice to the adverse party and to the board that he will not abide by said final ruling and decision. And he shall within twenty days after giving such notice bring suit in some court of competent jurisdiction in the county where the injury occurred to set aside said final ruling and decision and said board shall proceed no further toward the adjustment of such claim, other than as hereinafter provided: Provided, however, that whenever such suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this act, and the suit of the injured employee or person suing on account of the death of such employee shall be against the association if the employer of such injured or deceased employee at the time of such injury or death was a subscriber as defined in this act. If the final order of the board is against the association then the association and not the employer shall bring suit to set aside said final ruling and decision of the board, if it so desires, and the court shall in either event determine the issues in such cause instead of the board upon trial de novo and the burden of proof shall be upon the party claiming compensation. In case of recovery the same shall not exceed the maximum compensation allowed under the provisions of this act. If any party to any such final ruling and decision of the board, after having given notice as above provided, fails within said twenty days to institute and prosecute a suit to set the same aside, then said final ruling and decision shall be binding upon all parties thereto, and, if the same is against the association, it shall at once comply with such final ruling and decision, and failing to do so the board shall certify that fact to the commissioner of insurance and banking, and such certificate shall be sufficient cause to justify said commissioner of insurance and banking to revoke or forfeit the license or permit of such association to do business in Texas. (Acts 1913, p. 429, pt. 2, § 5; Act March 28, 1917, c. 103, pt. 2, § 5.)"

Under the diversity of citizenship jurisdiction, some of the litigation resulting has been removed to this court. Associated Industrial Insurance Co. v. Ellis et al. (D. C.) 16 F.(2d) 464. The instant case is one so arising.

The plaintiff brought this suit in this court, alleging total and permanent disability, and claiming legal compensation for 401 weeks. Issue was joined. After the introduction of the evidence and the argument of counsel the court asked the jury the following questions, to which neither side excepted:

"Special Issue No. 1. Was the plaintiff disabled as the proximate result of the fall of a wheel on or about March 21, 1927? Answer yes or no.

"Answer. Yes.

"Special Issue No. 2. If you have found that he was disabled, was he totally disabled? Answer yes or no.

"Answer. Yes.

"Special Issue No. 3. If you have found that he was totally disabled, how long was he totally disabled? Write in answer to that question, as to the length of time that he was totally disabled.

"Answer. One hundred and eighty (180) weeks.

"If you find that the disability was permanent, you may use that word, in answering that question; if you find that the disability was temporary, then you will say for how long.

"Special Issue No. 4. If you have found, in answer to the third question, that the disability was total and permanent, should he have the money allowed to him in a lump sum, or in weekly payments? Give the reason for your answer.

"Answer. In a lump sum; immediate relief."

The jury answered that the plaintiff had been totally disabled while employed, and in the manner alleged by him, for the period of 180 weeks. This period extended out into the future. It is conceded that he is entitled to $20 per week for any period while so suffering.

The court directed each side, upon disagreement, to submit a form of judgment. The plaintiff submits two forms; the first, finding the recovery for that period of the 180 weeks which has already passed, at $20 per week, less the amount already paid, and $20 per week for 137 weeks yet to come, also providing for execution if any weekly installment is not paid. The second form provides for the immediate recovery at $20 per week for that period which is already passed, allows execution upon any default for either of the 137 weeks yet to come, and then provides that the court may at any time during the compensation period of 401 weeks (this being the limit fixed by the statute) review the judgment, and end, diminish, or increase the compensation, or change or revoke the judgment, so that the weekly payments may not exceed plaintiff's average weekly wage of $41.54, such review, if any, to be upon motion of the court, or upon application of either party, showing a change in condition, mistake, or fraud, and upon legal notice to the parties.

The defendant offers a form similar to the first and second of the plaintiff as to the recovery of an amount equal to $20 per week for the weeks passed, and for the 137 unpassed weeks at the same rate per week, "subject, however, to the power and jurisdiction of this court at any time within the compensation period to review this judgment, by ending, diminishing, or increasing the compensation provided for in this judgment within the maximum and minimum provided by the Compensation Law of Texas, or may change or revoke this judgment, and such action on the court's part may be taken on its own motion, or upon the application of any interested party showing a change of condition, mistake, or fraud."

The defendant contends that article 5246—25, which is as follows: "Upon its own motion or upon the application of any person interested showing a change of conditions, mistake, or fraud, the board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this act, or change or revoke its previous order sending immediately to the parties a copy of its subsequent order or award. Review under this section shall be only upon notice to the parties interested"—applies to courts, as well as to the compensation board, which is created by the statute.

This view is sustained by one of the Courts of Civil Appeals of Texas, in Texas Employers' Insurance Association v. Mullican, 261 S. W. 215, and the Supreme Court of Texas refused a writ of error. In that case there had been a finding of a permanent partial incapacity to the extent of 80 per cent. The court entered a final judgment for the statutory compensation on such finding, with execution, as at common law, and refused and overruled appellant's motion to retain jurisdiction of the claim and administer it under the article quoted above.

The appellate court reversed the trial court, saying; "It is therefore our order that the judgment of the trial court be reformed, so as to permit and require it to administer this claim in accordance with article 5246—25, supra, and, as so reformed, it is affirmed." In the opinion it refers to the case of Western Indemnity v. Corder (Tex. Civ. App.) 249 S. W. 316, in the following language:

"Again, the judgment of the court in this case fully liquidated the appellee's claim for compensation on the theory of total incapacity, and made no provision for a review of the facts should appellee's condition improve in the future so as to relieve him of total incapacity. Except when a lump sum is awarded, or when total incapacity is based on the provisions of article 5246—20, Complete Texas Statutes or Vernon's Ann. Civ. St. Supp. 1918, the judgment of the court should not be so worded as to prevent a future inquiry into the condition of the injured employee, but the court should retain jurisdiction so as to do justice to both parties within the spirit of the compensation act. It might happen that a slight injury would develop into a total incapacity, and the jury's finding of partial incapacity should not bar the beneficiary from his rightful compensa-

tion. Again, on the trial the facts might fully sustain a finding of total incapacity, and yet within a few months the condition of the beneficiary might substantially improve, so as to relieve him of that infirmity. When a compensation case has been removed from the jurisdiction of the accident board, in our judgment the courts should administer it as the board would, had it retained jurisdiction. This was the effect of our order in U. S. Fidelity & Guaranty Co. v. Parker (Tex. Civ. App.) 217 S. W. 195."

There may be some difficulty in reconciling the opinion with expressions in Texas Employers' Ins. Ass'n v. Shilling (Tex. Com. App.) 289 S. W. 996, wherein the jury found that the plaintiff would suffer a 50 per cent. incapacity for 218 weeks, which had already passed, and then answered that they did not know how many weeks the incapacity would continue. On this finding the trial court entered a judgment providing: "The payments of plaintiff's compensation at the rate of 50 per cent. of the maximum rate of $15 per week, beginning on this date, and continuing in the future until and unless altered, changed, modified, or terminated by subsequent agreement between the parties hereto in accordance with the provisions of the Employers' Liability Act, and subject to the approval of this court, or until and unless altered, changed, modified, or terminated by subsequent order, award, judgment, or decree of this court, but in no event to continue for a longer period than 401 weeks from and after the 27th day of July, 1920, for which said weekly compensation let execution issue as it accrues."

The Supreme Court reversed that judgment, for the reason that there must be some definite finding before a judgment could be rendered for any compensation accruing after the date of the trial. This language is found: "It is argued, however, that neither the jury, nor the judge, nor any person, can with any degree of assurance determine the length of time that the partial incapacity might extend into the future, and hence that a finding on the subject, if made, would be immaterial and nonconclusive. But the argument confuses the difficulty of proof with its impossibility. Any ordinary suit for damages based upon an internal personal injury presents matters for the determination of the jury or the court as difficult of secure ascertainment as that presented in a case of this kind."

If, therefore, the judgment of the court must contain a finding as to the length of an incapacity that is not permanent, why inject uncertainty into it by allowing the court to reopen it at any time, as demanded in the opinion of the Court of Civil Appeals mentioned above?

The trial court seems to have put into the judgment exactly what the statute allowed. It did not allow a recovery for 401 weeks, unless and if the plaintiff's condition did not change, and the failure of the jury to find how long the condition would remain the same would seem to have justified the language of the judgment. But, the Commissioner of Appeals, who wrote the opinion, which was approved by the Supreme Court, said:

"So far as the jury made any finding at all on the point, it amounted to a finding that the matter which must determine whether the company should be required to pay compensation after the date of the judgment is entirely uncertain. The bases of the plaintiff's rights being those named in the statute, and the burden of establishing the facts necessary to support those rights being directly placed upon the plaintiff, the court is without authority to render a judgment operative in the future and merely assuming existence of the necessary facts."

Academically the criticism of the judgment is correct, because it authorizes a recovery upon a state of facts not found; that is, the jury did not find any future incapacity. But we are now trying to find out what the highest courts of Texas have said with reference to this new statute. We find that they have said that the finding of a court as to amount of compensation, and the time that it shall be paid in the future may be changed at any time upon motion of the court or by either party. They have also said that a judgment which recognizes this is not proper. So it would appear that there is no definite holding by the highest courts of the state upon this feature. Hudson v. Maryland Casualty Co. (C. C. A.) 22 F.(2d) 791.

The Legislature used no word to require the courts, upon an appeal from the board, to administer the law as the board was required to administer it. Therefore the Court of Civil Appeals, in construing the law, wrote into it something that the Legislature did not. It is what law writers call "judge-made state law."

[1-3] Are the United States courts, who sit in Texas and hear suits under the Texas compensation statute bound by the state court construction of that statute? The rule as announced in Kuhn v. Fairmount Coal Co., 215 U. S. 360, 30 S. Ct. 140, 143 (54 L. Ed. 228), is thus worded:

"1. When administering state laws and determining rights accruing under those laws, the jurisdiction of the federal court is an independent one, not subordinate to, but coordinate and concurrent with, the jurisdiction of the state courts. 2. Where, *before the rights of the parties accrued*, certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the state, those rules are accepted by the federal court as authoritative declarations of the law of the state. 3. But where the law of the state has not been thus settled, it is not only the right, but the duty, of the federal court to exercise its own judgment, as it also always does when the case before it depends upon the doctrines of commercial law and general jurisprudence. 4. So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, or when there has been no decision by the state court on the particular question involved, then the federal courts properly claim the right to give effect to their own judgment as to what is the law of the state applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued. But even in such cases, for the sake of comity and to avoid confusion, the federal court should always lean to an agreement with the state court if the question is balanced with doubt."

See, also, Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520.

In Swift v. Tyson it seems to have been declared that United States judges were bound to hear and decide a controversy between citizens of different states upon an independent examination of the source of the state law applicable to the controversy in question, and to declare or make the state law by the light of their own intelligence, and not to declare or make it by way of an automatic echo as the state judges may have declared or made it. Schofield, Constitutional Law, vol. 1, p. 48. Under Swift v. Tyson, the United States court asks the question: Is the state decision right? If the United States court merely has the power to declare state law, while the state court has the power to both declare and make state law, then, necessarily, the first will declare it as found, without any additions or subtractions.

Chief Justice Marshall, in Elmendorf v. Taylor, 10 Wheat, 152, 6 L. Ed. 289, announced the rule that the interpretation put upon a state statute by the highest court of the state will be accepted by the national court as governing all transactions which originated after the announcement of the state court decision, whether such decision commends itself to the judgment of the national court or not. This comity was again marked in Kuhn v. Fairmount Coal Company, and runs through all of the decisions. To follow the state Court of Civil Appeals requires this court to render no final judgment in these cases, and to retain jurisdiction until the employee gets well or dies, or until the utmost limit of the statute, 401 weeks in one instance, and 300 weeks in another instance, shall have passed.

All the rules—all of the wisdom for the procedure of a litigated case in court—are to be abandoned, and the party who is cast in one of these actions has no relief by appeal, because he cannot appeal unless the judgment from which he appeals is final. This construction makes the trial court the court also of last resort. Section 128, Judicial Code (28 USCA § 225), allows appeals or writs of error from district courts from *final decisions*. A decision is final when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined. St. Louis, etc., R. Co. v. Southern Exp. Co., 108 U. S. 28, 2 S. Ct. 6, 27 L. Ed. 638; Klever v. Seawall (C. C. A.) 65 F. 377. See "Other Definitions," 33 C. J. 1061.

On the other hand, this compensation legislation was practical, progressive enactment. It was for the protection of the working person—the laboring person. It was necessary because of the difficulty such persons had in securing proper remuneration and speedy remuneration when they were injured or killed. It seems to have been the wisdom of those who believed that the laborer should be helped. Under the old system he was impeded by questions of negligence, by delays in court, and in other ways. It is true he had a right of action for damages. When he disagrees with the present board, he still has his day in court; but, under the defendant's view, it is a new day—a day differing from that which he originally had. It is a day for the ascertainment of his injury, and the settling of the amount per week he is to receive; but, if his injury decreases or increases, there is to be a continuing supervision to ascertain such condition, and he is to have the benefit of it, if his injury grows worse, or those are to be relieved who are paying him, if the injury decreases or is entirely removed. I do not believe that it is a new day for him, in the sense that the established and orderly

procedure and finality of judgments are to be overturned. It is merely a new day in the sense that his right to recover and the amount thereof is made easier and the payments vouchsafed.

I do not think that the words of the statute are sufficient to charge the national court with such guardianship as must result if the word "board" is to also mean court. The act does not so demand nor read. If it did, a court sitting in an industrial center might be engaged almost exclusively in the constant administration of such matters. An ordinary case would very easily extend during a period of eight years, during which time it might be continuously reopened and plaintiff's condition re-examined.

Judgment No. 1, submitted by the plaintiff, will be entered, after being approved as to form.