**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Victor KALINOWSKI, Defendant–Appellant.**

**No. 88–3009.**

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1989.

Decided Nov. 15, 1989.

Thomas M. Durkin and Lisa Huestis, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Michael Null, Adam Bourgeois, Reed Lee, Chicago, Ill., for defendant-appellant.

Before COFFEY and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

Victor Kalinowski appeals from convictions for knowingly shipping in interstate and foreign commerce magazines depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) and for knowingly receiving visual depictions of minors engaging in sexually explicit conduct, that had been transported and shipped in interstate and foreign commerce, in violation of 18 U.S.C. § 2252(a)(2). Because the judgment of the district court is non-final, we dismiss the appeal for want of appellate jurisdiction.

In the spring of 1987 the United States Customs Service (Customs), in conjunction with the Canadian Customs Service, instituted an undercover child pornography operation that was code named "Operation

Borderline." The United States Customs Service created a false Canadian distributor of child pornography and designed a non-illustrated brochure consisting of items of child pornography Customs had previously seized. These brochures were sent only to individuals, like Victor Kalinowski, from whom Customs had earlier seized items of child pornography. Customs sent Kalinowski a brochure in March 1987 and Kalinowski ordered four separate photo sets containing 48 photographs of minors engaged in sexually explicit conduct.

Upon receiving Kalinowski's order in Canada, Canadian Customs forwarded the material to U.S. Customs Agent John O'Malley in Chicago. O'Malley then assembled the photos Kalinowski ordered from Customs' stock of previously seized child pornography. The child pornography was hand delivered to Ottawa, Canada and given to DHL Couriers. DHL, in turn, transported the package to its central station in Rosemont, Illinois. Agent O'Malley received the envelope containing the child pornography from this location and a warrant was then obtained on June 12, 1987, permitting a search of Kalinowski's home after the child pornography was delivered. On June 13, 1987, a Customs agent, disguised as a DHL delivery person, delivered the child pornography to Kalinowski's residence. Approximately fifteen minutes after this delivery, the search warrant was executed. Numerous items of child pornography were seized, including those the government had delivered a few minutes previously.

Before trial the district court expressed some doubt about the validity of the count of the original indictment that charged Kalinowski with causing child pornography to be shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(1). The district court entered a pre-trial memorandum order on December 1, 1987, requesting the government to explain why it should not dismiss this count. The court's position was that 18 U.S.C. § 2252(a)(1), unlike similar statutes proscribing mail fraud and wire fraud, did not specifically "criminalize[ ] the act of 'causing' such materials to be transported or shipped, as opposed to the actual acts of transportation and shipping themselves." The court also noted that this count and the count in the same indictment charging Kalinowski with receipt of these materials would criminalize the same conduct in two different ways. On December 4, 1987, the grand jury returned a superseding indictment that included a count (count 3) charging Kalinowski with violating both 18 U.S.C. §§ 2252(a)(1) and 2(b) when he caused the child pornography to be sent.[1] Although the court, in a December 17, 1987 order, permitted this count of the superseding indictment to stand, it noted that it expressed "no opinion as to whether the causation charged as part of that count is properly met in the factual scenario presented by this case, where it will be recalled that the actual sender of the challenged materials was the government's own 'sting' operation." Shortly prior to trial, on July 8, 1988, Kalinowski filed a "Motion to Dismiss Count Three or Count Four of Indictment" on the ground of multiplicity, contending that the government impermissibly used 18 U.S.C. § 2, in conjunction with 18 U.S.C. § 2252(a)(1), to turn a single act into a multiplicity of offenses.[2] On that same day the district court entered an order noting that: "Defendant's motion to dismiss count 3 or count 4 of the indictment is withdrawn without prejudice to reassertion of a claim that if convicted on both counts defendant could not be sentenced on both counts 3 and 4."

Following a jury trial held on July 11–14, 1988, Kalinowski was found guilty of both count 3 (causing child pornography to be shipped in interstate and foreign commerce

---

1. 18 U.S.C. § 2(b) provides that:

"Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

2. Count 3, as noted above, alleged that Kalinowski violated 18 U.S.C. §§ 2252(a)(1) and 2(b) in causing child pornography to be shipped in interstate and foreign commerce. Count 4 alleged that Kalinowski violated 18 U.S.C. § 2252(a)(2) when he received child pornography shipped in interstate and foreign commerce.

in violation of 18 U.S.C. § 2252(a)(1)) and count 4 (receiving child pornography shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(2)). Sentencing was held and a judgment of conviction entered on September 28, 1988. The court's judgment appears on its face to be somewhat inconsistent. The judgment noted that Kalinowski was convicted of both shipping child pornography in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(1) as charged in count 3 of the indictment and of receiving child pornography shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(2) as charged in count 4 of the indictment. However, the court's judgment imposed sentence only on count 4 of the indictment. Kalinowski was placed on probation for five years. Conditions of probation included residence and participation for nine months in the work/release program at the Chicago Metropolitan Correctional Center, a $3,000 fine, a prohibition of Kalinowski's presence at public swimming pools or other places where minors are present who are not fully clothed, and psychological counselling at Kalinowski's own expense. Following its description of the sentence imposed on count 4 the court's judgment stated: "Over government's objection, this Court dismisses count 3 of the ... indictment."

Seven days later, on October 5, 1988, the Government moved for the court to "(1) reconsider its ruling that the defendant was not subject to multiple sentences for his separate convictions under Title 18, United States Code, Sections 2252(a)(1) and 2252(a)(2) and (2) for correction of an illegal sentence imposed on Count Four...." On October 7, 1988, two days after the Government had filed its post-judgment motions, Kalinowski filed a notice of appeal of the district court's September 28, 1988, judgment and sentence. The district court has not to date ruled upon the Government's post-judgment motions.[3]

## II

"In the Judiciary Act of 1789, 1 Stat. 73, the first Congress established the principle that only 'final judgments and decrees' of the federal district courts may be reviewed on appeal.' *Id.* at 84." *Midland Asphalt Corp. v. United States,* —— U.S. ——, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989). Thus, in determining whether we have appellate jurisdiction, we must consider whether either of the Government's October 5, 1988 motions affected the finality of the district court's September 28, 1988, judgment.

We turn initially to the Government's motion for reconsideration of the district court's failure to impose a sentence on Kalinowski's conviction for causing child pornography to be shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(1) as charged in count 3 of the indictment. In *United States v. Healy,* 376 U.S. 75, 77–78, 84 S.Ct. 553, 555, 11 L.Ed.2d 527 (1964), the Supreme Court was faced with the question of "whether in a criminal case a timely petition for rehearing by the Government filed within the permissible time for appeal renders the judgment not final for purposes of appeal until the court disposes of the petition...." The Court determined that a Government filed rehearing petition did render the district court's judgment non-final, *id.* at 78–80, 84 S.Ct. at 555–57, and supported its ruling with the following rationale: "Of course speedy disposition of criminal cases is desirable, but to deprive the Government of the opportunity to petition a lower court for the correction of errors might in some circumstances actually prolong the process of litigation—since plenary consideration of a question of law here ordinarily consumes more time than disposition of a petition for rehearing—and could, in some cases, impose an added and unnecessary burden of adjudication upon this Court." *Id.* at 80, 84 S.Ct. at 556.

In *United States v. Dieter,* 429 U.S. 6, 7–9, 97 S.Ct. 18, 19–20, 50 L.Ed.2d 8 (1976)

---

**3.** At oral argument the parties stated that they would file post-argument briefs in response to our questions concerning appellate jurisdiction.

We received a brief from the Government on this point, but did not receive a brief from Kalinowski.

(per curiam), the Supreme Court relied upon *Healy* in holding that a district court judgment was non-final in a case quite similar to Kalinowski's. In *Dieter* the Government filed a "Motion to Set Aside [the] Order of Dismissal" at a time within the period for appeal of a district court judgment dismissing an indictment. *Id.* at 7, 97 S.Ct. at 19. The Court observed that "It is true that the Government's post-dismissal motion was not captioned a 'petition for rehearing,' but there can be no doubt that in purpose and effect it was precisely that, asking the District Court to 'reconsider [a] question decided in the case' in order to effect an 'alteration of the rights adjudicated.' *Department of Banking v. Pink*, 317 U.S. 264, 266, 63 S.Ct. 233, 234, 87 L.Ed. 254 (1942)." *Dieter*, 429 U.S. at 8–9, 97 S.Ct. at 19–20. Accordingly, *Healy*'s policy of "giving district courts the opportunity promptly to correct their own alleged errors" was applicable, *id.* at 8, 97 S.Ct. at 20, and the motion to reconsider rendered the district court's original dismissal order non-final. *Id.* at 8–9, 97 S.Ct. at 19–20.

In *United States v. Gargano*, 826 F.2d 610, 611–12 (7th Cir.1987), we specifically applied *Dieter* and *Healy* in concluding that a motion for reconsideration in a criminal case filed during the time for appeal of a district court judgment or order tolls the time for appeal and divests the court of appeals of jurisdiction over an appeal during the pendency of the motion to reconsider, even when the appeal was filed prior to the motion to reconsider. We stated:

"The next question is the effect of Gargano's motion for reconsideration on the appeal from the denial of his motion under Rule 35. The procedure for handling Rule 35 motions is governed by the Federal Rules of Criminal Procedure, and although those rules contain no provision for motions to reconsider, the Supreme Court has held that a motion for reconsideration may be filed in a criminal case and that if filed within the time allowed for an appeal it tolls the time for appealing, just like a timely motion under Rule 59(e) [of the Federal Rules of Civil Procedure]. *United States v. Healy*, 376 U.S. 75, 77–80, 84 S.Ct. 553, 554–56, 11 L.Ed.2d 527 (1964); see also *United States v. Dieter*, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976) (per curiam); *Nilson Van & Storage Co. v. Marsh*, 755 F.2d 362, 364 (4th Cir.1985); cf. *In re X–Cel Inc.*, 823 F.2d 192, 193 (7th Cir.1987). Gargano had 10 days to appeal from the denial of his Rule 35 motion, see Fed.R. App.P. 4(b), and he filed his motion for reconsideration within that time. Therefore, the time for appeal was tolled." 826 F.2d at 611–12.

Applying *Healy*, *Dieter* and *Gargano* to our case, we note that the government's motion for reconsideration was filed within the time for its appeal of the district court's post-trial dismissal of count 3 that had alleged a violation of 18 U.S.C. § 2252(a)(1).[4] Filing this motion rendered

---

4. Under 18 U.S.C. § 3731 the United States is permitted to appeal within 30 days from any "decision, judgment, or order of a district court dismissing an indictment or information … as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." Government appeal of a post-verdict dismissal of a count of an indictment, as part of a sentencing determination, is not barred under the double jeopardy clause for several reasons. Initially, the Supreme Court has determined "that neither the history of sentencing practices, nor the pertinent rules of this Court, nor even consideration of double jeopardy policy support … an equation" between the finality of a jury's verdict of acquittal and a court's determinations during sentencing. *United States v. DiFrancesco*, 449 U.S. 117, 132, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980). This reason has special significance in this case, where the district court's judgment appears, somewhat inconsistently, to enter conviction based upon the jury's verdict convicting Kalinowski of count 3 and then, as part of sentencing, dismisses that count. Further, there is clear precedent under the Double Jeopardy Clause supporting a government right to appeal, even from an acquittal, when, as here, the court enters such an order following a jury verdict convicting the defendant. *See, e.g., United States v. Greer*, 850 F.2d 1447, 1449–50 (11th Cir.1988); *United States v. Dixon*, 658 F.2d 181, 187–88 (3rd Cir.1981); *United States v. Brandon*, 633 F.2d 773, 778–79 (9th Cir.1980). The rationale for these decisions is that an appeal from a post-verdict acquittal does not subject the defendant to another prosecution, but merely rein-

the district court's September 28, 1988 judgment non-final, tolled the time for appeal and deprived us of jurisdiction over the appeal until such time as the district court rules on the motion for reconsideration. Because the district court has not ruled on the government's motion for reconsideration, we lack jurisdiction over Kalinowski's appeal.[5]

On the basis of much the same analysis, we must also conclude that the government's motion for reduction of illegal sentence, directed to the sentence imposed pursuant to Kalinowski's conviction on count 4 for receiving child pornography that had been shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(2), deprived us of appellate jurisdiction. Like the Government's motion to reconsider, its motion to correct an illegal sentence under the version of Rule 35 of the Federal Rules of Criminal Procedure applicable to convictions for conduct occurring prior to November 1, 1987, in the words of the Supreme Court in *Dieter*, sought to " 'reconsider [a] question decided in the case' in order to effect an 'alteration of the rights adjudicated.' " *Dieter*, 429 U.S. at 9, 97 S.Ct. at 20 (quoting *Department of Banking v. Pink*, 317 U.S. 264, 266, 63 S.Ct. 233, 234, 87 L.Ed. 254 (1942)). Accordingly, under *Dieter, Healy* and *Gargano*, this motion deprived us of appellate jurisdiction until it was determined by the district court. Because the district court has not ruled upon this motion, its pendency provides a second basis upon which we lack jurisdiction over Kalinowski's appeal.[6]

This court lacks jurisdiction to proceed with Kalinowski's appeal as a result of the district court's failure to rule on the government's two motions pending in the trial court. After the district court has entered a final judgment after ruling on the two pending motions, the defendant Kalinowski and/or the government may wish to proceed again with an appeal with the filing of a proper notice of appeal. When the appropriate notice of appeal is filed, the case will then be reviewed by this present panel on the current briefs and on any other basis which may be raised by appropriate parties.

DISMISSED.

FAIRCHILD, Senior Circuit Judge, concurring.

I write only to note that lack of finality does more than prevent an appeal.

In civil cases, the lack of finality of something which appears in form to be a judgment for money prevents execution of the judgment. *Redding & Company v. Russwine Construction Corporation*, 417 F.2d 721, 727 (D.C.Cir.1969); Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2661.

It seems logical that in criminal cases something which in form is a judgment and sentence on one count, but which is not final because other counts have not been disposed of (*U.S. v. Patel*, 835 F.2d 708, 709 (7th Cir.1987)) or has become non-final because of the filing of a motion, does not authorize imprisonment of a defendant, col-

---

states the jury's previous verdict. *Cf. United States v. Wilson*, 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026–27, 43 L.Ed.2d 232 (1975) (Relying upon the fact that a new trial would not be granted as a result of a government appeal in holding "that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause."). This same reasoning also explains why the Government could challenge on appeal the legality of the sentence imposed under count 4 without running afoul of the Double Jeopardy Clause.

**5.** The Government's motion for reconsideration directly involves only count 3 of the indictment that charged Kalinowski with causing the trans-

portation of child pornography in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(1). But, this motion precludes consideration of the entire appeal because a defendant may not appeal a single count until final judgment is imposed upon all the counts that were considered together in a single criminal trial. *See United States v. Patel*, 835 F.2d 708, 709 (7th Cir.1987).

**6.** On the basis of the same analysis found in footnote 5, *supra*, we lack jurisdiction over the entire appeal during the pendency of the government's motion to correct illegal sentence, even though his motion was directed solely to the sentence imposed on count 4 that involved a violation of 18 U.S.C. § 2252(a)(2). *See Patel*, 835 F.2d at 709.

lection of his fine, or running of his term of probation.